JOHN BARBER

#0503340152

W.V.D.C.#5-D-8

9500 N.ETIWANDA AVE.

RANCHO CUCAMONGA CA.91739

FILED

MAR 1 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

555
new

E-filing

**D E C L A R A T I O N**

SBA

ATT:

SENATOR DIANNE FEINSTEIN    CV 08    1526

U.S.SENATE

331 HART SENATE OFFICE BUILDING

WASHINGTON,D.C.20510    (PR)

U.S.DEPARTMENT OF JUSTICE

U.S.ATTORNEY

CENTRAL DISTRICT OF CALIFORNIA

1200 UNITED STATES COURTHOUSE

312 N.SPRING ST.

LA.CA.90012

GOVERNOR SCHWARZENEGGER

801 CAPITOL MAIL

SACRAMENTO CA.95814

PROSPECTIVE DEFENSE ATTORNEY[S].

COMES NOW JOHN BARBER,BEING DULY SWORN DEPOSES AND STATES:

1)THAT,BY THIS DECLARATION AND ATTACHED VERIFIED STATEMENT AND EXHIBITS,I,JOHN BARBER,PETITION TO NAMED OFFICERS OF GOVERNMENT, FOR REDRESS PURSUANT TO THE CALIFORNIA CONSTITUTION ART.I.§3.

2)THAT,PETITIONER SEEK REDRESS FROM THE CONTINUED EFFECTS OF A HATE CRIME,INITIATED UNDER THE COLOR OF AUTHORITY; AND GOVERNMENTAL MALICIOUS,CORRUPT WILLFUL MISCONDUCT,DESIGNED TO DISSUADE AND/OR OBSTRUCT JUSTICE IN VIOLATION OF THE 5th,14th AMENDMENTS TO THE U.S.CONSTITUTION.

3)THAT,PETITIONER HAVE RESPECTED THE CHAIN OF COMMAND IN RESPECT TO SEEKING REDRESS BY: (a)PETITIONING LOCAL GOVERNMENT; HOWERVER SUCH EFFORTS HAVE BEEN FRUITLESS...BECAUSE (1)THE LOCAL GOVERNMENT ARE A DIRECT PARTY TO THE COMPLAINT; (2)THE LOCAL GOVERNMENT HAS A POLITICAL,FINANCIAL OR SOCIAL INTEREST IN DIRECT CONFLICT WITH THEIR MANDATORY OBLIGATIONS AND RESPONSIBILITY.

I DECLARE THE FOREGOING IS TRUE AND CORRECT.

DATE $\underline{1/3}$ 2008

DECLARANT/PROSE

# VERIFIED STATEMENT

## OF

### FACTS

ON 8/5/2004,JOHN BARBER,WAS SOUGHT OUT FOR OPPRESSIVE,DISCRIMINATORY
TREATMENT BASED ON RELIGION,(ISLAM),BY A UNIFORMED CORRECTIONAL
STAFF,(EUGINE WARFIELD),WHOM WAS AN EMPLOYEE OF DESERT VIEW,A
PRIVATE PRISON,UNDER CONTRACT AND DIRECT SUPERVISION OF THE STATE
OF CALIFORNIA DEPARTMENT OF CORRECTION.

ON THE DAY IN QUESTION BARBER,REPORTED (WARFIELD),TO THE C.D.C.
SGT.ISAAC,#33266,FOR HARASSMENT AND PROHIBITING BARBER,FOR HAVING
A POCKET SIZE HOLY QUR'AN. APPROXIMATELY 45 MINUTES AFTER THE
COMPLAINT WAS LODGE,WARFIELD LIED AND WAITED IN PROXIMITY OF THE
REGULAR WEEKLY ISLAMIC SERVICES WHERE BARBER FREQUENTED AN UPON
CONTACT INTIATED UNNECESSARY EXCESSIVE FORCE TO WIT HE USED A
LARGE METAL FLASHLIGHT AS A WEAPON IN AN UNLAWFUL ATTEMPT TO
STRIKE BARBER IN THE HEAD.THE FOREGOING ACTION TRANSPIRED IN THE
MAIN HALLWAY OF THE INSTITUTION IN PLAIN NON OBSTRUCTED VIEW OF
THE STATIONARY VIDEO MONITORING CAMERA AND IN THE PRESENCE OF
SEVERAL MATERIAL WITNESSES.
 IN A CORRUPT ACT TO MINIMIZE THE HATE CRIME,THE INSTITUTION
OFFICIALS INTENTIONALLY SUPPRESSED,DESTROYED OR CONCEALED THE
RELEVANT MATERIAL EVIDENCE OF THE VIDEO TAPE,AND FILE KNOWN
FALSE STATEMENTS INDICATING THAT WARFIELD HAD NO HISTORY OF SUCH
DISCRIMINATORY BEHAVIORS...WHEN IN FACT WARFIELD HAD COMPLAINTS
LODGE AGAINST HIM FOR ANTAGONIZING MUSLIM SINCE 2002 AND HIS

IMMEDIEN SUPERVISOR SGT.CROSTHWAIT,FILED A MEMO WARNING THE

INSTUTION OFFICIALS THAT "WARFIELD CONTINUE TO ACT WITH HOSTILITY

AND INTIMIDATION OF INMATES IN SUCH A MANNER AS TO PROVOKE VIOLENCE

DATED 2000. (PLEASE SEE EXHIBIT A)


IN 3/2005 BARBER,WAS BROUGHT BEFORE THE COURT ON A ONE COUNT

COMPLAINT ALLEGING P.C..§4501.5 BATTERY ON THE PERSON OF WARFIELD

A NON PRISONER. SUBSEQUENTLY BARBER,ASSERTED A DISCRIMINATORY

AND SELF-DEFENSE, UPON REFUSAL OF A PLEA AGREEMENT 13 MONTHS AFTER

THE PROSECUTION BEGAIN THE THEN PROSECUTOR AMENDED THE COMPLAINT

AS A TOOL TO DISSUADE OR PUNISH BARBER,FOR EXERCISING HIS RIGHTS,

AND HE HAS AMENDED THE COMPLAINT AND OR INFORMATION FIVE SUCCESSIVE

TIMES INCREASING THE PUNISH IN INCREMENTS AND CHARGING CRIMES HE

KNEW OR SHOULD HAVE KNOWN DID NOT HAPPEN.

(PLEASE SEE EXHIBIT B)


IN DIRECT CONFLICT WITH THE PROSECUTIONS CONSTITUTIONAL DUTY,

THE PROSECUTOR INITIATED A PROSECUTION WITHOUT PROBABLE OR REASON-

ABLE CAUSE AND ALLOWED KNOW FALSE FACT TO BE PRESENTED TO THE

COURTS,WHERE IN RESPECT TO THE NEW ALLEGED VICTIM GALE AMPARAN.

SHE FILED A MEDICAL CLAIM INDICATING IN PERTINENT PART SHE INJURED

HER RT.HAND AND HAD NUMBNESS AND TINGLING IN THAT HAND,ON 8/6/2004

AND INJURY INVESTIGATIONS WAS DONE COMPLETE WIT PHOTO OF THE

ALLEGED INJURE,HOWEVER 34 DAYS LATER SHE INDICATE IT WAS HER LEFT

HAND AND SUSEQUENTLY TESTIFIED UNDER THE PENALTY OF PERJURY.

ON 9/8/2004 THE WORKER COMPENSATION SPECIALIST DIADONOSIS WAS

RADICULOPATHY LEFT UPPER EXTREMITY SECONDARY TO BRANCHIAL PLEXUS

ENTRAPMENT OR DEGENERATIVE DISC DISEASE.

ALTHOUGH AMPARAM,KNEW SHE WAS RECIEVING TREATMENT FOR SUCH PRIOR

TO THE DAY IN QUESTION SHE ATTRIBUTED THAT TO BARBER,MOREOVER

SHE DISPLAYED A CLEAR PATTERN OF SUCH DECIETFULNESS WHERE SHE

ALSO ATTRIBUTED A PRIOR WHIPLASH SUSTAINED IN 1999 TO BARBER

SEE REPORTS TRANSCRIP 10/19/2005 PG#25 LN.#27 PG#26 LN#4

**(PLEASE SEE EXHIBIT C)**


BASED ON A FINANACIAL AND ENTITY AGREEMENT BETWEEN THE COUNTY

OF SAN BERNARDINO AND THE PRIVATE INSTITUTION OWNERS,THE THEN

PROSECUTOR USED CORRUPT CRIMINAL ACTIVITY IN AN ATTEMPT TO

CONCEAL RELEVANT MATERIAL EVIDENCE THAT WOULD HAVE EXONERATED

BARBER...MOREOVER HE EMPLOYEED THE ASSISTANCE OF BARBERS COURT

APPOINTED DEFENSE INVESTIGATOR LEROY MILTON TO AIDE THE CRIMES

WHERE ON 5/9/2007 THE DA AND INVESTIGATOR ALLEGED WENT TO THE

INSTITUTION TO PROVIDE INFORMATION OF THE VIDEO CAMERA IN THE

MAIN HALLWAY.IN WHICH THEY PROVIDED PHOTO AND "OUT RIGHT LIED TO

THE COURT THAT"THERE WAS NO CAMERA IN THE MAIN HALLWAY OF THE

INSTITUTION" AND UPON BARBER SUBPEONAING A WITNESS(SGT.ISAAC)

WHOM WAS PART OF THE INVESTIGATION TESTIFIED THAT THE DAY OF THE

INVESTIGATION THERE WAS A CAMERA IN THE MAIN HALLWAY OF THE

INSTITUTION.

**(PLEASE SEE COMPLAINT FILED 12/3/2007 PG#6-7/COLOR PHOTO[S]**

**REPORT TRANSCRIPT 5/11/2007 PG#26 LN#1-9/REPORT TRANSCRIPT 10/26/07**

**PG#8 LN#14-PG#10 LN#9 MARKED EXHIBIT D)**


ON 5/9/2007 DURING AN INVESTIGATION CONDUCTED BY THE PROSECUTION

AND DEFENSE INVESTIGATOR ON AUDIO TAPE SGT.ISAAC,STATED:

ON 8/5/2004 PRIOR TO THE ALTERCATION BARBER APPROACHED HIM

1  COMPLAINTING THAT WARFIELD WAS DISRESPECTING AND HARASSING HIM

2  ABOUT HIS POCKET SIZE HOLY QUR'AN,AND HE WANTED TO STOP...BARBER

3  SAID HE HAD A LOT OF THINGS GOING ON,ON THE OUTSIDE AND DID NOT

4  WANTED TO CATCH ANY MORE TIME...SGT ISAAC STATES:I ASK BARBER TO

5  LET ME SEE HIS HOLY QUR'AN,AND HE DID,I THEN CONTACTED GALE AMPARAN

6  WHO WAS WARFIELDS WATCH COMMANDER AND WE AGREED BARBER SHOULD BE

7  ABLE TO HAVE HIS QUR'AN..,MOREOVER SGT.ISAAC INDICATED THAT:

8  IT WAS A WELL KNOWN FACT ABOUT HOW WARFIELD TREATED THE INMATES

9  AND AT ONE POINT THERE WAS SO MANY COMPLAINTS WARFIELD HAD TO BE

10  PLACED OUTSIDE THE PRISON TO WORK TO BE KEPT AWAY FROM INMATES.

11  **(PLEASE SEE AUDIO INTERVIEW TAPE BY REQUEST 5/9/2007)**

12

13  PETITIONER ASSERT THE FOREGOING ACTION WAS AND IS A HATE CRIME

14  BASED ON RELIGION...THE INSTITUTION HAS NEVER ALLEGED THAT BARBER

15  VIOLATED ANY RULES OR LAWS THAT WOULD SUBJECT TO LAW ENFORCEMENT

16  ACTION.BARBER WAS A DISCIPLINARY FREE INMATE AND A NEW ARRIVAL

17  AT THE INSTITUTION APPROXIMATELY 18 DAYS PRIOR TO THE DAY IN

18  QUESTION,AND HAS REMAINED IN CUSTODY 3 YEARS AFTER THE DAY IN

19  QUESTION DISCIPLANARY FREE...WHILE THE PROSECUTOR SEEK TO TAKE

20  HIS LIFE AS A CORRUPT FAVOR TO THE ENTITY IN WHICH IS A FINANCIAL

21  INTEREST. IF THE PROSECUTORS HAS VOWED TO PREVENT CRIME BY

22  COMMITTING CRIMES,PETITIONER ASK BUT ONE QUESTION "WHOM WILL WATCH

23  THE PROSECUTORS? THERE IS AN ONING PROBLEM IN SAN BERNARDINO

24  COUNTY WITH AN OVER ZEALOUS WILLINGNESS TO CONVICT PEOPLE OF

25  COLOR EVEN BY COMMITTING CRIMES.

26

27

28

# V E R F I C A T I O N

I JOHN BARBER, AM A DIRECT PARTY TO THE WITHIN ACTION.

I HAVE PERSONAL KNOWLEDGE OF THE STATEMENT[S] ASSERTED IN THE

ABOVE DOCUMENT, BASED ON THAT PERSONAL KNOWLEDGE, I BELIEVE THE SAME

TO BE TRUE AND CORRECT AND TO SUCH I AFFIX MY SIGNATURE, UNDER

THE LAWS OF PENALTY OF PERJURY IN THE STATE OF CALIFORNIA THIS

3rd DAY OF MARCH 2008, IN THE CITY OF RANCHO CUCAMONGA , COUNTY OF

SAN BERNARDINO.

E-filing

SBA

CV 08     1526

(PR)

# Exhibit A





Desert View
Modified Community Correctional Facility

www.thegeogroupinc.com

February 9, 2006

Mr. David Foy
Deputy District Attorney
County of San Bernardino
14455 Civic Drive
Victorville, CA  92392

Re:  People of the State of California vs John Barber
     Case No. FVI 020303
     Order for Production of Medical Records and Disciplinary Records

Dear Mr. Foy:

With regard to the Order for Production of Medical Records and Disciplinary Records for Gale
Amparan and E. L. Warfield, I have reviewed all disciplinary records on file.  This letter will serve
as confirmation of no record of discipline on file for either party.

All medical records on file with Desert View MCCF for Gale Amparan and E. L. Warfield are
attached as requested.

If I can be of any further assistance, please advise.

Sincerely,

Gerardo Acevedo
Facility Administrator

GA:jo

Enclosures

February 6, 2003

~ 3

(909) 9448676

Wackenhut Corp.
Attn: Personnel

REF:  WARFIELD, Eugene Lee
AKA:  Eugene Lee Lewis
SSN:  ▮▮▮▮▮▮▮
EMPLOYMENT DATES:  04/1999
TO:  Present

FILE NO.  SFO/▮▮▮▮▮▮

We have been informed that the person listed above was/is employed by you and you have knowledge of the applicant's character and qualifications. The Department of Corrections, in an effort to select personnel who will maintain the high standards of performance required of this position, requests your assistance in helping us determine the suitability of this person by completing this questionnaire. A self addressed envelope requiring no postage is enclosed for your convenience.

Thank you for your cooperation and prompt reply to this request. *Background Investigation Section*

Between what dates did the applicant work for you? FROM **4/26/99** TO **Present**

NAME OF COMPANY: **Desert View MCCF**

ADDRESS: **10450 Rancho Rd. Adelat** PHONE: **(760) 246-1171**

Describe the applicant's position and duties: **Responsible for the care, control, safety and security of inmates incarcerated in this facility**

How did applicant react to company policy, rules and procedures?

☑ COMPLIED FULLY    ☐ USUALLY COOPERATED    ☐ RESISTED    ☐ DISOBEYED

COMMENTS: _____

How would you rate the applicant's job performance?

☐ OUTSTANDING    ☐ EXCELLENT    ☑ SATISFACTORY    ☐ UNSATISFACTORY

COMMENTS: _____

Please check any problems affecting applicant's work:

☐ DOMESTIC TROUBLES    ☐ ABSENCE OR TARDINESS    ☐ UNABLE TO FOLLOW INSTRUCTIONS
☐ INABILITY TO GET ALONG    ☐ DISCIPLINARY PROBLEMS    ☐ ALCOHOL OR DRUG ABUSE

COMMENTS: **None to my knowledge**

Has the applicant ever been reprimanded or the subject of any adverse action?    ☐ NO    ☑ YES

To your knowledge, has the applicant been involved in any illegal conduct?    ☑ NO    ☐ YES

Would you trust the applicant with confidential matters?    ☑ YES    ☐ NO

Does applicant lose his/her temper easily?    ☑ NO    ☐ YES

Is applicant able to make decisions under stress?    ☑ YES    ☐ NO

Why did applicant leave this job? **Still employed**

Would you rehire applicant?    ☑ YES    ☐ NO    If not, why?

SIGNATURE **M. Winters-Steven**    TITLE **HR Mgr.**    DATE **2/10/03**

**ATTACH ADDITIONAL SHEETS FOR COMMENTS/EXPLANATIONS IF NEEDED**

AAA

Re: Eugene Warfield                    04/01/2006

Levister – Page A-2

CRAWFORD & COMPANY
APR 1 0 2006
FRESNO

Desert View Community Correctional Facility/GEO Group, Inc., Facility Administrator Gerald Acevedo's 10/2003 job title "Correctional Officer" was reviewed.

02/24/2000 and other memorandum from Sergeant Crosthwait, regarding conflict between two officers and other memos were reviewed. He noted that Officer Warfield has continually shown hostility and intimidation in such a way as to provoke inmates towards violence and/or serious injury of this institution.

* * *

03/22/2002 Memorandum from C/O McManus was reviewed.

* * *

**Records were preliminarily reviewed and outlined by Ms. Alicia Garcia. This data was re-reviewed and the outline was expanded upon by this reporter.**

03/23/05 Letter from A. Benjamin Ph.D. noting that all parties should know by now that Mr. Warfield has been found to have had a heart attack. Underwent a pre-op and EKG revealed he had sustained a myocardial infarction.

12/13/04 Psychiatric Evaluation. Impression: Axis I: Post-traumatic stress disorder, secondary to industrial incident August 5, 2004. Axis II: N/A. Axis III: N/A. Axis IV: Industrial incident of August 5, 2004. Axis V: GAF – 55. J. Kohut, M.D.

08/05/04 Emergency Room Record. Punched in mouth by inmate. Blood pressure 166/103, pulse 116, respirations 16, weight 200. Impression: Facial trauma. Maxillary fracture. Several avulsed teeth.

Doctor's First Report of Occupational Injury. Date of injury: 08/06/04. Date of first examination: 08/06/04. R. Pilbe, M.D.

Doctor's First Report of Occupational Injury. Date of injury: 08/05/04. Date of first examination: 08/05/04. Physically assaulted by inmate, hit repeatedly in the face by both of his fists. Status post trauma, no damage to eyes found.

1              VICTORVILLE, CALIFORNIA; FRIDAY, MAY 5, 2006

2       DEPARTMENT NO. V-4     HON. **STEPHEN H. ASHWORTH**, JUDGE

3

4   APPEARANCES:

5                  (Defendant, In Propria Persona,

6                  with his Investigator, LEROY MILTON;

7                  DAVID FOY, Deputy District Attorney,

8                  representing the People of the State

9                  of California.)

10                 (Brenda Bennett, C.S.R., Official Reporter,

11                 C-11830)

12

13             THE COURT:  Are we ready on Mr. Barber's case?

14             MR. FOY:  I am.

15             THE COURT:  Well, announce your appearances,

16   Mr. Foy.

17             MR. FOY:  David Foy representing the People.

18             THE COURT:  Mr. Barber is here representing

19   himself, with his investigator.

20             MR. FOY:  Your Honor, we're here --

21             THE COURT:  Where we left off is we were still

22   hoping to get some information from CDC; right?

23             MR. FOY:  Yes.  I -- for the record, I had

24   requested some copies of, I guess they call them 602

25   appeals from any -- basically, appeals, related to the two

26   victims, Officer Warfield and Lieutenant -- or now Captain

27   Apperan, A-p-p-e-r-a-n.

28             I was informed -- I got a memo from correctional

1 counsel -- or T. Lansend, who is a sworn peace officer.
2 There is none on Lieutenant Apperan.  There's two on victim
3 Officer Warfield.  One of these two was an appeal filed by
4 the defendant; we already have copies of that.  He's got
5 his; I got another one.  There is another additional one
6 that we were not aware of, apparently the complaint was
7 filed in 2002, against Officer Warfield.  And I suppose it
8 is conceivably relevant and I need to turn it over.

9      The only thing I have a concern about, your Honor,
10 is I'm concerned that the defendant has taken advantage of
11 his status as a pro per inmate to post on the internet
12 confidential medical information belonging to the victim --
13 one of the victims in this case.  It was brought to my
14 attention by Captain Apperan that there's some website,
15 like prison rights website, where it says there's a posting
16 by someone who appears to be this defendant, because it
17 discusses the facts in the case, and includes information
18 that was provided to this defendant through discovery.  It
19 was medical records relating to Captain Apperan in this
20 website, and a copy of it was printed out and faxed to me
21 by Captain Apperan, and I have a copy for the Court and a
22 copy for the defendant.  Although, he wrote it so he should
23 be familiar with it.

24      But in this website posting, although it's written
25 anonymously, it very much appears to be this case and this
26 defendant.  And he makes reference to medical information
27 that was contained in the reports that were given to him.
28 These are confidential medical records.  They are -- I

State of California

A–13

Department of Corrections

# Memorandum

Date    :    December 17, 2004

To    :    Warden Gerardo Acevedo
Desert View Modified Community Correctional Facility

Subject:    **ALLEGATIONS OF STAFF MISCONDUCT**

Attached is a letter addressed to CDC Director Woodford regarding allegations of misconduct by GEO Group staff assigned to Desert View Modified Community Correctional Facility (DVMCCF). This letter was written by Inmate John Barber, CDC# V-24899, who was previously housed at DVMCCF. The letter has been forwarded to my office with instructions to ensure that the allegations outlined in the letter are reviewed and investigated. In addition, a written response has been requested to close the matter.

As the allegations involve GEO Group staff, I am requesting that you conduct an inquiry into this matter and respond in writing to my office no later than December 29, 2004. If you have further questions regarding this matter, or if I can be of assistance, please feel free to contact me at extension 118.

D. B. LONG
Facility Captain
Adelanto CCF / MCCF Complex

CDC 1617 (3/89)

A-12  2pgs

To;

~~████████████████████████~~
~~████████████~~

The Director of Corrections
Jeanne Woodford

~~████████████████████████~~
~~████████████~~

My Name is John Barber.
I'm appealing To The integrity of your
office for redress.
On August 5, 2004. At Desert View Meet
I was The victim of employee
misconduct. GEO Staff, Eugene Warfield
Badge #3940 ID#2140 While under The
Color of Authority did deviate from
all Departmental procedures To Articulate
His personel discriminatory agenda. Toward
Those of The Islamic Faith. This account
ordeal Subsided by a physical altercation,
"Endangering The lifes of others."
The magnitude of This affair was
persevered by electronic Surveillance
However by some unethical Turn of
Fate The Relevant Information have
been Made inavailable. an objective
view of All Documentation, Synopsis/summary
#837-A1 and Crime/Incident Report 837-2
will Reveal These pertinent facts.
(1) GEO Staff Member Collaborated on The
falsification of documents.

A -12

(2) GEO Staff Members did willfully violate The Department Operation's procedures on The Handing of Evidence.

(3) GEO Staff Members did willfully violate The procedures for Reporting Fight (ascertain All witness).

(4) GEO STAFF Members did willfully violate The procedures on minimize The Need of Physical Force (mechanical Restraints).

What is Most disenchanting., I've been inform by The Senior Hearing officer, That The officer behavior before This ordeal is unimportant, and the C.D.C is Not bound by the law "And in the Future Short of being Hospitalize., I should allow a officer to do what ever there going to do to me, because I cant win"!

I understand That as Convicted Men we've less certain Rights, does That include The Right To Exist with Human dignity? or Have I forfeited my right To Safety?

I Humbly Request your Sense of fair decree in Resolving This Matter.

Thank you

John Barber   V24899

A2u 116 c

44750 60 st West

Lancaster

# MEMORANDUM

**GEO**

GLOBAL EXPERTISE IN OUTSOURCING

The GEO Group, Inc.

**Desert View M.C.C.F.**

10450 Rancho Rd

Adelanto, California 92301

www.thegeogroupinc.com

Date:     December 28, 2004

To:        Gerardo Acevedo, Warden
cc:

From:    F. Carter, Captain

RE:       **INMATE JOHN BARBER, CDC# V24899 INVESTIGATION**

As per your directive on December 22, 2004, conduct an investigation into the above matter - pursuit to the complaint filed on November 29, 2004, by Inmate John Barber, CDC#V24899, regarding staff misconduct.

This complaint is in reference to the assault on staff, committed by Inmate J. Barber, on August 8, 2004 at approximately 1914 hours; Incident log number DV-CCF-04-08-21. Inmate Barber is alleging staff misconduct by Officer E. Warfield which resulted in the assault.

Inmate J. Barber's allegations are as follows:

1. I was the victim of Employee misconduct – GEO Staff Eugene Warfield under the color of authority deviated from departmental procedures by showing discrimination towards the Islamic faith which resulted in the physical altercation.
2. GEO Staff members collaborated on the falsification of documents
3. GEO staff willfully violated the department operation procedures on the handling of evidence.
4. GEO staff willfully violated the procedures for reporting a fight (Ascertain all witness)
5. GEO staff willfully violated procedures on minimizing the need of physical force (mechanical restraints)

## FINDINGS:

According to all reports relating to this situation, Officer Warfield followed proper policy and procedures. There is nothing in the reports that reflect that Officer Warfield showed any discrimination towards the Islamic faith. Had Inmate Barber experienced any form of discrimination from Officer Warfield or any other GEO staff member, there are appropriate steps to take for properly addressing his concerns such as in the form of a 602 as outlined in CCR§ 3084.2. Further, Inmate Barber failed to follow orders given to him by Officer Warfield and that is why Officer Warfield radioed Lt. Amparan for assistance. After Lt. Amparan arrived on the scene, Inmate Barber still refused to obey orders given to him by Lt. Amparan as outline in Title 15 section 3005(b)(a) (Conduct- Obeying orders & Refrain from behavior which might lead to violence or disorder). Inmate Barber took it upon himself to resolve his problem by using physical force on Officer Warfield.



Finally, all appropriate documents were submitted to the California Department of Corrections and Inmate Barber was found guilty of violating CCR§ 3005(c) for the specific act of Battery on a non-prisoner with serious injury by CDC Lt. Merrick, Senior Hearing Officer on September 30, 2004. CDC Sgt. K. Bell conducted the employee investigation pertaining to a CDC-115 submitted on Inmate Barber, for violation of the Director's Rules, Section 3005(c), staff and inmate witnesses were interviewed and all evidence were collected and submitted according to guidelines. As far as the use of mechanical restraints as outlined in part A1 of the 837 Crime Incident Report, section "USE OF FORCE," staff followed guidelines as outlined in CCR§ 3268.2 (a) (2) (Use of Restraints).

# **Proof of Service By Mail**

I am over the age of 18 and a party / not a party (mark one out) to the cause.

I am a resident of or employed in the county where the mailing occurred.  My residence or business address is (specify):  MO. GRUNDY NOTARY
24337 KURT CT, MORENO VALLEY CA. 92551

I served the attached:  CITIZEN COMPLAINT §832.5 & AFFIDAVIT

By enclosing true copies in a sealed envelope addressed to each person whose name and address is given below and depositing the envelopes in the United States mail with the postage fully prepaid.

1) Date of deposit:
    5/9/2006

2) Place of deposit (city and state):
    MORENO VALLEY CA.

NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED:

DESERT VIEW MCCF STATE PRISON PO. BOX 4000 ADLENTO CA. 92302

I certify under penalty of perjury that the foregoing is true and correct.

Date:

5/9/2006

► MO GRUNDY, NOTARY
    (TYPE OR PRINT NAME)

► _____
    (SIGNATURE OF DECLARANT)

M. GRUNDY
COMM. #1609097
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Sept 25, 2009

# § 832.5 CITIZENS' COMPLAINTS AGAINST PERSONNEL

## INVESTIGATION; DESCRIPTION OF PROCEDURE; RETENTION OF RECORDS

(a) Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies and shall make a written description of the procedure available to the public.

(b) Complaints and any reports or findings relating thereto shall be retained for a period of at least five years. (Added by Stats. 1974, c.29 §1. Amended by Stats. 1978, c. 630 §4.) (All reference to California Penal Code 1994.)

## PERSONNEL COMPLAINT:

Complainant  JOHN BARBER

Address    9500 ETIWANDA AVE

City RANCHO CUCAMONGA State CAL.      Zip   91739

Residence phone (      )

Business phone ( 760 )  241-1101 MPI INVESTIGATIONS

Date and time of incident  8/5/04 TO PRESENT REPRESENTED

Location of incident  DESERT VIEW MCCF STATE PRISON

**☑ Check only one:**
1. ☐ Police Department
2. ☐ California Highway Patrol
3. ☐ U.S. Marshall
4. ☐ Sheriff's Department
5. ☐ Medical Staff
6. ☐ District Attorney
7. ☐ County Grand Jury
8. ☐ Internal Affairs
9. ☒ Department of Corrections
10. ☐ Bar Association

Personnel involved  GEO STAFF/. EUGINE WARFIELD #3840/ G. AMPARAN DESERT VIEW MCCF STATE PRISON.

Names and addresses of witnesses  CDC SGT. LSAAC #3266 10450 RANCHO RD. ADELANTO CA V. JONES CDC#V 35893, 10450 RANCHO RD. ADELANTO CA.. EZELL CDC#V 14009 44750 .60TH.ST WEST LANCASTER CA 95336. L. RICHCDC# D 25651 SAN DIEGO CA ~~REGION THREE PAROLE~~ ( LINDA AZZIAAGA) P, STEWART CDC# V35893

Statement of complaint  EUGENE WARFIELD A CUSTODAIL STAFF EMPLOYED BY DESERT VIEW CONTINUEOUSLY USED. THE COLOR OF AUTHORITY TO OPPRESS COMPLAINT BECAUSE OF COMPLAINANTS RELIGION (ISLAM). WARFIELD ALSO ADMINISTERED UNNESSCARY FORCE IN A DIRECT AND IMMEDIATE REPRISAL FOR COMPLAINANT REPORTING HIS MISCONDUCT. WARFIELD ALSO IN CONNECTION TO THE FOREGOING KNOWINGLY FILED A FALSE REPORT

G. AMPARAN, A COSTODIAL OFFICER  AT DESERT VIEW ALSO FILED A FALSE REPORT IN CONNECTION WITH E. WARFIELD. AMPARAN FILED A "COMPLETELY" FALSE MEDICAL REPOR TO WHICH SHE RECIEVED WORKERS COMPENSATION BENEFITS. FURTHER AMPAAN COMMITED PERJURY IN CONNECTION TO THE FALSE MEDICAL REPORTS  ON 10/19/05 IN THE SUPERIOR COURT IN SAN BERNARDINO COUNTY DIVISION # 2.

(CRA 02419/ 1-92 [832.5 CAP])

- Side A. -

DESERT VIEW DID KNOWINGLY AND WILLFULLY CONCEAL MATERIAL EVIDENCE CONCERNI
EXCESSIVE FORCE INVOLVING E. WARFIELD AND PREPARED AND FILED FALSE REPORTS
WITH THE SUPERIOR COURTS IN THE COUNTY OF SAN BERNARDINO

FACTS NO 1

On 7/28/04 WARFIELD ENTERED THE ISLAMIC SERVICES AT DESERT VIEW. DISRUPTED TH
SERVICES. MADE COMMITS ABOUT COMPLANANTS FACIAL HAIR AND IMMEDIATELY WITHOUT
REASON BEGAIN TO THREATEN COMPLAINANT AND THE OTHER MEMBERS WITH INSTITUTION
PUNISHMENT. THE INGIDENT WAS REPORTED TO SGT. ISAAC IMMEDIATELY. OVER THE NEXT
WEEK THE COMPLAINANT SUFFERED BEING STRUCK IN THE GROIN AND WAS DEPRIVED THE USE OF A OPEN
REST ROOM BY WARFILED. ON 8/5/04 WARFIELD STOP COMPLAINANT IN THE MAIN HALLWAY. A HARRASS
COMPLAINANT FOR HAVING A [HOLY QUR'AN]. THIS INCIDENT WAS REPORTED TO SGT. ISAAC. AND
APPROXIMATELY 45 MINUTES LATER COMPLAINANT WAS MET BY WARFIELD AT THE ISLAMIC SERVICES. IN
A VIOLENT AND DERICT REPRISAL. WARFIELD FILED A REPORT STATING ( HE ATTEMPTED TO STOP THE
COMPLAINANT BECAUSE HE DID NOT KNOW WHERE HE WAS GOING)

FACT NO.2

G. AMPARAN IN CONNECTION WITH WARFIELD FILED A FALSE REPORT STATING THE COMPLAINANT PICK
HER UP WITH ONE HAND AND SLAMMED HER AGAINST THE 'S-20 DOOR. APPROXIMATELY THREE TIMES.

Use additional sheets of 8 1/2"x 11" white paper if necessary. Attach all
relevant supporting documentation.)

I, the undersigned declare under penalty of perjury under the laws of
the State of California that the foregoing complaint is true and correct
and as to such facts averred upon information and belief, that I am so
informed and believe the same to be true, and affix my signature
hereto.

Dated this _9_ day of _May_, _2006_

Attachments
No. of pages. (TWO).

_____
(Complainant Signature)

M. GRUNDY
COMM. #1000097
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Sept 21, 2008

FACT NO 2 CONT.

AMPARAN SUBSEQUENTELY FILED A FALSE MEDICAL REPORT STATING, (SHE HURT HER HEAD
NECK, RIGHT ARM , RIGHT KNEE HAD PAIN NUMBNESS AND TINGLING IN HER RIGHT HAND.
THIS REPORT WAS FILED AT DESERT VIEW ON 8/5/04.

ON 8/9/04 AMPARAN FILED A MEDICAL REPORT AT DESERT VALLEY INDUSTRIAL CLINIC
STATING SHE HURT HER NECK, AND RIGHT SHOULDER SUBSEQUENTELY SHE RECIEVED
MEDICAL TREATMENT AND WORKER COMPENSATION BENIFITS.

ON 9/2004 AMPARAN WAS SEEN BY THE WORKERS COMPENSATION DR. PAUTZ TO WHICH SHE
FILED A REPORT STATING THAT SHE HURT HER LEFT SHOULDER AND HAD NUMBNESS AND
TINGLING IN HER LEFT HAND. AFTER MRI, AND EMG THE DR PAUTZ REPORTED THAT
AMPARAN HAD DEGENRATING DISC DISEASE AND A ABNORMAL CURVETURE IN HER'(POSTEREOR)
AMPARAN ON 30/19/05 TESTIFIED THAT SHE HAD A BULGING DISC IN HER NECK.
FROM 8/5/04 AMPARAN HAS CONTINEOUSLY GAVE INFORMATION THAT WAS ABSOLUTELY FALSE
IN POLICE REPORTS. STATE INQUIRY, INSURANCE CLAIMS AND IN OPEN COURT WHILE
UNDER OATH, SHE HAS EMPLOYED SUCH UNETHICAL AND UNLAWFUL TACTICS TO PROCURE
COMPLAINANT TO BE FALSELY PUNISHED BY THE DEPARTMENT OF CORRECTIONS AND THE
SUPERIOR COURTS OF THE STATE OF CALIFORNIA.

FACT NO.3

DESERT VIEW  CONCEALED MATERIAL EVIDENCE, IN THAT THE INCIDENT TOOK PLACE IN
THE MAIN HALLWAY IN PLAIN NON OBSTRUCTED VIEW OF THE PRISON SURVEILLANCE CAMARA
 DURING THE STATE DISCIPLINARY HEARING DESERT VIEW INFORMED THE SENIOR HEARING
OFFICER THAT (EVERY SIX DAYS THEY RECORD OVER THE VIDEO) THEN IN 3/2005 THEY
REPORTED TO THE DISTRICT ATTORNEY OFFICE, (THE CAMARA DO NOT RECORD)

FACT NO.3 CONT.

DESERT VIEW ALSO FILED A STATEMENT WITH THE COURTS STATING ( WARFIELD DID NOT HAVE ANY DISCIPLINARY ACTION IN HIS FILE) ON 5/5/2006 A INMATE APPEAL WAS PRESENTED IN COURT DATED 2/2004 ALLEGING THAT WARFIELD HAD BEEN HARASSING ANOTHER INMATE WHO WAS ALSO A PARTICIPANT IN THE ISLAMIC SERVICES.

COMPLANIANT HAS FILED INMATE APPEAL #602 TO WHICH DESERT VIEW HAS CURCUMVENT THE PROCESS, COMPLAINANT HAS FILED A COMPLAINT WITH THE OFFICE OF THE INSPECTOR GENRAL TO WHICH THE INSPECTOR GENRALS OFFICE ALLEGED (IT WAS AND ISOLATED INCIDENT) WHILE THE FACTS SHOW THAT WARFIELD HAS MAINTAIN A DISCRIMINATORY INTENT TOWARD THOSE OF A PARTICULAR RELIGIOUS BACKGROUND. CAMPLAINANT HAS BEEN INCARCERATED ONE YEAR PASS HIS PAROLE DATE IN WHICH HE SUFFERED A VERY OPPRESSIVE INCARCERATION BASE ON LIES FROM BOTH AMPARAN AND WARFIELD IN A ATTEMPT TO COVER MISCONDUCT. COMPLAINANT DO NOT DENY BEING IN A PHYSICAL ALTERCATION WITH WARFIELD, HOWEVER COMPLAINANT HAS MAINTAIN FROM THE ONSET THAT THE PHYSICAL WAS A MATTER OF SELF DEFENSE FROM BEING STRUCK IN THE HEAD WITH[ A METAL FLASHLIGHT BY WARFIELD] A FAIR AND IMPARTIAL INVESRIGATION WILL DEMONSTRATE THAT THE GEO GROUP DEVEIATED FROM EVERY PROTOCAL THE DEPARTMENT HAS SET FORTH..

DECLARATION

I JOHN BARBER BE THE PARTY EFFECTED BY THE FOREGOING CONTENTIONS HAS READ ALL INFORMATION ASSERTED HERE IN AND SO BELIEVES IT TO BE TRUE BASE ON PERSONAL EXPERINCE, AND DOCUMENTARY EVIDENCE THUS I DECLARE UNDER THE PENALTY OF PERJURY THE FOREGOING IS TRUE THIS—7—DAY OF _May_ 2006

M. GRUNDY
COMM. #1609097
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Sept 25, 2008

DECLARANT

WITNESS

# § 832.5 CITIZENS' COMPLAINTS AGAINST PERSONNEL
## INVESTIGATION; DESCRIPTION OF PROCEDURE; RETENTION OF RECORDS

(a) Each department or agency in this state which employs peace officers shall establish a procedure to investigate citizens' complaints against the personnel of such departments or agencies and shall make a written description of the procedure available to the public.

(b) Complaints and any reports or findings relating thereto shall be retained for a period of at least five years. (Added by Stats. 1974, c. 29 §1. Amended by Stats. 1978, c. 630 §4.) (All reference to California Penal Code 1994.)

## PERSONNEL COMPLAINT:

Complainant  JOHN BARBER

Address  9500 ETIWANDA AVE

City RANCHO CUCAMONGA State CAL.      Zip  91739

Residence phone (    )

Business phone (760) 241-1101 MPI INVESTIGATIONS

Date and time of incident  8/5/04 TO PRESENT REPRESENTED

Location of incident  DESERT VIEW MCCF STATE PRISON

**Check only one:**
1. ☐ Police Department
2. ☐ California Highway Patrol
3. ☐ U.S. Marshall
4. ☐ Sheriff's Department
5. ☐ Medical Staff
6. ☐ District Attorney
7. ☐ County Grand Jury
8. ☐ Internal Affairs
9. ☒ Department of Corrections
10. ☐ Bar Association

Personnel involved  GEO STAFF/. EUGINE WARFIELD #3840/ G. AMPARAN DESERT VIEW MCCF STATE PRISON.

Names and addresses of witnesses  CDC SGT. LSAAC #3266 10450 RANCHO RD. ADELANTO CA V. JONES CDC#V 35893, 10450 RANCHO RD. ADELANTO CA.. EZELL CDC#V 14009 44750 60TH.ST WEST LANCASTER CA 95336. L. RICHCDC# D 25651 SAN DIEGO CA REGION THREE PAROLE ( LINDA AZZIAAGA) P, STEWART CDC# V35893

Statement of complaint  EUGENE WARFIELD A CUSTODAIL STAFF EMPLOYED BY DESERT VIEW CONTINUEOUSLY USED. THE COLOR OF AUTHORITY TO OPPRESS COMPLAINT BECAUSE OF COMPLAINANTS RELIGION (ISLAM). WARFIELD ALSO ADMINISTERED UNNESSCARY FORCE IN A DIRECT AND IMMEDIATE REPRISAL FOR COMPLAINANT REPORTING HIS MISCONDUCT. WARFIELD ALSO IN CONNECTION TO THE FOREGOING KNOWINGLY FILED A FALSE REPORT.

G. AMPARAN, A COSTODIAL OFFICER  AT DESERT VIEW ALSO FILED A FALSE REPORT IN CONNECTION WITH E. WARFIELD. AMPARAN FILED A "COMPLETELY" FALSE MEDICAL REPORT TO WHICH SHE RECIEVED WORKERS COMPENSATION BENEFITS. FURTHER AMPAAN COMMITED PERJURY IN CONNECTION TO THE FALSE MEDICAL REPORTS  ON 10/19/05 IN THE SUPERIOR COURT IN SAN BERNARDINO COUNTY DIVISION # 2.

(CRA 02419/ 1-92 [832.5 CAP])

- Side A. -

DESERT VIEW DID KNOWINGLY AND WILLFULLY CONCEAL MATERIAL EVIDENCE CONCERNI(

EXCESSIVE FORCE INVOLVING E. WARFIELD AND PREPARED AND FILED FALSE REPORTS

WITH THE SUPERIOR COURTS IN THE COUNTY OF SAN BERNARDINO

FACTS NO 1

On 7/28/04 WARFIELD ENTERED THE ISLAMIC SERVICES AT DESERT VIEW. DISRUPTED THE
SERVICES. MADE COMMITS ABOUT COMPLANANTS FACIAL HAIR AND IMMEDIATELY WITHOUT
REASON BEGAIN TO THREATEN COMPLAINANT AND THE OTHER MEMBERS WITH INSTITUTIONA
PUNISHMENT. THE INCIDENT WAS REPORTED TO SGT. ISAAC IMMEDIATELY OVER THE NEXT
WEEK THE COMPLAINANT SUFFERED BEING STRUCK IN THE GROIN AND WAS DEPRIVED THE USE OF A OPEN
REST ROOM BY WARFILED. ON 8/5/04 WARFIELD STOP COMPLAINANT IN THE MAIN HALLWAY, A HARRASS
COMPLAINANT FOR HAVING A [HOLY QUR'AN]. THIS INCIDENT WAS REPORTED TO SGT. ISAAC. AND
APPROXIMATELY 45 MINUTES LATER COMPLAINANT WAS MET BY WARFIELD AT THE ISLAMIC SERVICES IN
A VIOLENT AND DERICT REPRISAL. WARFIELD FILED A REPORT STATING ( HE ATTEMPTED TO STOP THE
COMPLAINANT BECAUSE HE DID NOT KNOW WHERE HE WAS GOING)

FACT NO.2

G. AMPARAN IN CONNECTION WITH WARFIELD FILED A FALSE REPORT STATING THE COMPLAINANT PICK
HER UP WITH ONE HAND AND SLAMMED HER AGAINST THE 'S-20 DOOR. APPROXIMATELY THREE TIMES.

Use additional sheets of 8 1/2"x 11" white paper if necessary. Attach all
relevant supporting documentation.)

I, the undersigned declare under penalty of perjury under the laws of
the State of California that the foregoing complaint is true and correct
and as to such facts averred upon information and belief, that I am so
informed and believe the same to be true, and affix my signature
hereto.

Dated this ___9___ day of ___May___, 2006

Attachments
No. of pages . (TWO).  .....  _____
(Complainant Signature)

M. GRUNDY
COMM. #1000097
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Sept 21, 2008

FACT NO 2 CONT.

AMPARAN SUBSEQUENTELY FILED A FALSE MEDICAL REPORT STATING, (SHE HURT HER HEAD NECK, RIGHT ARM , RIGHT KNEE HAD PAIN NUMBNESS AND TINGLING IN HER RIGHT HAND. THIS REPORT WAS FILED AT DESERT VIEW ON 8/5/04.

ON 8/9/04 AMPARAN FILED A MEDICAL REPORT AT DESERT VALLEY INDUSTRIAL CLINIC STATING SHE HURT HER NECK, AND RIGHT SHOULDER SUBSEQUENTELY SHE RECIEVED MEDICAL TREATMENT AND WORKER COMPENSATION BENIFITS.

ON 9/2004 AMPARAN WAS SEEN BY THE WORKERS COMPENSATION DR. PAUTZ TO WHICH SHE FILED A REPORT STATING THAT SHE HURT HER LEFT SHOULDER AND HAD NUMBNESS AND TINGLING IN HER LEFT HAND. AFTER MRI, AND EMG THE DR PAUTZ REPORTED THAT AMPARAN HAD DEGENRATING DISC DISEASE AND A ABNORMAL CURVETURE IN HER'(POSTERIOR) AMPARAN ON 30/19/05 TESTIFIED THAT SHE HAD A BULGING DISC IN HER NECK. FROM 8/5/04 AMPARAN HAS CONTINEOUSLY GAVE INFORMATION THAT WAS ABSOLUTELY FALSE IN POLICE REPORTS. STATE INQUIRY, INSURANCE CLAIMS AND IN OPEN COURT WHILE UNDER OATH, SHE HAS EMPLOYED SUCH UNETHICAL AND UNLAWFUL TACTICS TO PROCURE COMPLAINANT TO BE FALSELY PUNISHED BY THE DEPARTMENT OF CORRECTIONS AND THE SUPERIOR COURTS OF THE STATE OF CALIFORNIA.

FACT NO.3

DESERT VIEW  CONCEALED MATERIAL EVIDENCE, IN THAT THE INCIDENT TOOK PLACE IN THE MAIN HALLWAY IN PLAIN NON OBSTRUCTED VIEW OF THE PRISON SURVEILLANCE CAMARA DURING THE STATE DISCIPLINARY HEARING DESERT VIEW INFORMED THE SENIOR HEARING OFFICER THAT (EVERY SIX DAYS THEY RECORD OVER THE VIDEO) THEN IN 3/2005 THEY REPORTED TO THE DISTRICT ATTORNEY OFFICE, (THE CAMARA DO NOT RECORD)

FACT NO.3 CONT.

DESERT VIEW ALSO FILED A STATEMENT WITH THE COURTS STATING ( WARFIELD DID NOT HAVE ANY DISCIPLINARY ACTION IN HIS FILE) ON 5/5/2006 A INMATE APPEAL WAS PRESENTED IN COURT DATED 2/2004 ALLEGING THAT WARFIELD HAD BEEN HARASSING ANOTHER INMATE WHO WAS ALSO A PARTICIPANT IN THE ISLAMIC SERVICES.

COMPLANIANT HAS FILED INMATE APPEAL #602 TO WHICH DESERT VIEW HAS CURCUMVENT THE PROCESS, COMPLAINANT HAS FILED A COMPLAINT WITH THE OFFICE OF THE INSPECTOR GENRAL TO WHICH THE INSPECTOR GENRALS OFFICE ALLEGED (IT WAS AND ISOLATED INCIDENT) WHILE THE FACTS SHOW THAT WARFIELD HAS MAINTAIN A DISCRIMINATORY INTENT TOWARD THOSE OF A PARTICULAR RELIGIOUS BACKGROUND. CAMPLAINANT HAS BEEN INCARCERATED ONE YEAR PASS HIS PAROLE DATE IN WHICH HE SUFFERED A VERY OPPRESSIVE INCARCERATION BASE ON LIES FROM BOTH AMPARAN AND WARFIELD IN A ATTEMPT TO COVER MISCONDUCT. COMPLAINANT DO NOT DENY BEING IN A PHYSICAL ALTERCATION WITH WARFIELD, HOWEVER COMPLAINANT HAS MAINTAIN FROM THE ONSET THAT THE PHYSICAL WAS A MATTER OF SELF DEFENSE FROM BEING STRUCK IN THE HEAD WITH[ A METAL FLASHLIGHT BY WARFIELD] A FAIR AND IMPARTIAL INVESRIGATION WILL DEMONSTRATE THAT THE GEO GROUP DEVEIATED FROM EVERY PROTOCAL THE DEPARTMENT HAS SET FORTH..

DECLARATION

I JOHN BARBER BE THE PARTY EFFECTED BY THE FOREGOING CONTENTIONS HAS READ ALL INFORMATION ASSERTED HERE IN AND SO BELIEVES IT TO BE TRUE BASE ON PERSONAL EXPERINCE, AND DOCUMENTARY EVIDENCE THUS I DECLARE UNDER THE PENALTY OF PERJURY THE FOREGOING IS TRUE THIS——9——DAY OF _May_ 2006

WITNESS

M. GRUNDY
COMM. #1609097
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Sept 25, 2008

DECLARANT

2

# EXHIBIT C

**STATE OF CALIFORNIA**

**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

EXHIBIT A-2

DEPARTMENT OF CORRECTION

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | |
|---|---|---|---|---|---|
| DVMCCF | Medical | USE OF FORCE / INJURY / UNUSUAL OCCURRENCE / ON THE JOB INJURY / PRE AD/SEG ADMISSION | | | DATE 8/05/04 |

| THIS SECTION FOR INMATE ONLY | NAME LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME LAST Enckren | FIRST G | BADGE # 2245 | RANK/CLASS LT | ASSIGNMENT/RDOs F-5 |
| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST MIDDLE | HOME ADDRESS CITY STATE ZIP | DOB | OCCUPATION HOME PHONE |

| PLACE OF OCCURRENCE Raen Cerrdn 820 | DATE/TIME OF OCCURRENCE 8-5-04 | NAME OF WITNESS(ES) C/o Warfield - Chavira | | |
|---|---|---|---|---|
| TIME NOTIFIED 1950 | TIME SEEN 2025 | ESCORTED BY Self | MODE OF ARRIVAL (circle) AMBULATORY / LITTER / WHEELCHAIR / ON SITE | AGE / RACE His / SEX F |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

Inmate Driler CDC # V 27899 attempted to assault her, and c/o Warfield placed his hand to block hit. She was thrown up against door 5-20 approx 3 times. Back of head, red, swollen and tingling. C/o of right hand painful.

| INJURIES FOUND? | YES/NO |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | (16) |
| head inj | (17) |
| | 18 |
| | 19 |

#1, 11

#4, 11, 14, 16

#4, 11, 14, 16

#17

#11, 14, 16

R knee pain

| SPRAY EXPOSURE? | YES / NO |
|---|---|
| CONTAMINATED? | YES / NO |
| Decontamination instructions given? | YES / NO |
| Used decontamination? | YES / NO |
| min. checks | |
| Issued exposure packet? | YES / NO |

| NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|

DISPOSITION 30 Returned to work

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) F. Bell, RN HSA | BADGE # | RDOs |
|---|---|---|

# INJURY PREVENTION / INVESTIGATION REPORT

REPORT OBJECTIVE:
1. Why the injury occurred (Determine cause).
2. How a similar injury can be prevented in the future (Corrective Action).

| Name:  Gale Amparan | | SS#: ▓▓▓▓▓ |
| --- | --- | --- |
| Department:  Security | Title:  Lieutenant | Shift:  2nd. |
| Injury Date:  8/5/04 | Injury Time:  1930 | Report Date:  8/6/04 |

**Exact Location in Facility: Main Corridor**

**HOW:** (Detail what employee was doing; how he or she was doing it; and note condition of tools, equipment, & environment.) Lt. Amparan was attempting to subdue an inmate who had hit an Officer.

**What:** (What type of injury occurred?  What body part was injured?)
Alleges: Head, neck, rt. Arm and rt. Knee.  Bruises and soreness

**Have similar accidents/incidents occurred involving the same individual or the same location?**  No

| Witnesses:  Officer Eugene Warfield | Evidence:  (Photos, measurements, etc.) Photo's were taken |
| --- | --- |

In your opinion what caused the injury?  What following component(s) were involved in the cause of the injury?  Write components in the appropriate box.

**Contributing factors:**

| Equipment/Environment | Employee Behaviors | Work Process |
| --- | --- | --- |
| (e.g. footwear, weather, equipment)<br><br>N/A | (e.g. proper methods, training, deviation from normal task)<br><br>N/A | (e.g. job set-up, staffing, methods) |

**Root Cause:**  Lt. Amparan was assisting Correctional Officer Warfield subdue an inmate in the main corridor and alleges the above injuries occurred.

Were appropriate injury reporting procedures followed? YES

| Supervisor notified immediately?     Yes  No | Reason for Delay:<br><br>N/A |
| --- | --- |
| Workers Comp. Specialist notified immediately?     Yes   No | |
| Claim immediately reported to insurance carrier and Corporate?     Yes  No | |

**Medical attention:  None was given at the time of the incident.**

| Investigator:  Sgt. Rosier | _signature_ | Date:  8/6/04 |
| --- | --- | --- |



011_08-05-04_20

LT Ampaw.
Back of head
Swollen.

30



007_08-05-04_20

008_08-05-04_20



009_08-05-04_20   LT ANARAS



010_08-05-04_20

State of California
Department of Industrial Relations
DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE'S CLAIM FOR
WORKERS' COMPENSATION BENEFITS**

If you are injured or become ill because of your job, you may be entitled to workers' compensation benefits.

Complete the **"Employee"** section and give the form to your employer. Keep the copy marked **"Employee's Temporary Receipt"** until you receive the dated copy from your employer. You may call the Division of Workers' Compensation at **1-800-736-7401** if you need help in filling out this form or in obtaining your benefits. An explanation of workers' compensation benefits is included on the back of this form.

You should also have received a pamphlet from your employer describing workers' compensation benefits and the procedures to obtain them.

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

Estado de California
Departamento de Relaciones Industriales
DIVISION DE COMPENSACION AL TRABAJADOR

**PETICION DEL EMPLEADO PARA BENEFICIOS
DE COMPENSACIÓN DEL TRABAJADOR**

Si Ud. se ha lesionado o se ha enfermado a causa de su trabajo, Ud. tiene derecho a recibir beneficios de compensación al trabajador.

Complete la sección **"Empleado"** y entregue la forma a su empleador. Quédese con la copia designada **"Recibo Temporal del Empleado"** hasta que Ud. reciba la copia fechada de su empleador. Si Ud. necesita ayuda para completar esta forma o para obtener sus beneficios, Ud. puede hablar con la Division de Compensación al Trabajador llamando al **1-800-736-7401**. En la parte de atrás de esta forma se encuentra una explicación de los beneficios de compensación al trabajador.

Ud. también debería haber recibido un folleto describiendo los beneficios de compensación al trabajador y los procedimientos para obtenerlos.

Toda aquella persona que a propósito haga o cause que se produzca cualquier declaración o representación material falsa o fraudulenta con el fin de obtener o negar beneficios o pagos de compensación a trabajadores lesionados es culpable de un crimen mayor "felonia".

**Employee:** *Empleado:*

1. Name. *Nombre.* Amparan Gale

2. Home address. *Dirección Residencial.* 15431 Kiamichi Rd #4     Today's Date. *Fecha de Hoy.* 8-5-04

3. City. *Ciudad.* Appl Valley

4. Date of Injury. *Fecha de la lesión (accidente).* 8.5.04     State. Estado. Ca     Zip. Código Postal. 92307

5. Address and description of where injury happened. *Dirección/lugar dónde occurió el accidente.* Desert view MCCF     Time of injury. *Hora en que ocurrió.* 1914 p.m.

6. Describe injury and part of body affected. *Describa la lesión y parte del cuerpo afectada.* Head, neck, back right arm, right knee

7. Social Security Number. *Número de Seguro Social del Empleado.* 6___-05-713___

8. Signature of employee. *Firma del empleado.*

**Employer** - complete this section and give the employee a copy immediately as a receipt.
*Empleador* - complete esta sección y déle inmediatamente una copia al empleado como recibo.

9. Name of employer. *Nombre del empleador.* DESERT VIEW MCCF

10. Address. *Dirección.*

11. Date employer first knew of injury. *Fecha en que el empleador supo por primera vez de la lesión o accidente.* 8/5/04

12. Date claim form was provided to employee. *Fecha en que se le entregó al empleado la petición.* 8/5/04

13. Date employer received claim form. *Fecha en que el empleador devolvió la petición al empleador.* 8/5/04

14. Name and address of insurance carrier or adjusting agency. *Nombre y dirección de la compañía de seguros o agencia administradora de seguros.* **STATE COMPENSATION INSURANCE FUND** Crawford y Co. PO BOX 24016

15. Insurance Policy Number. *El número de la póliza del Seguro.*

16. Signature of employer representative. *Firma del representante del empleador.*

17. Title. *Título.* HR Specialist     18. Date. *Fecha.* 8/6/04     19. Telephone. *Teléfono.* (760) 246-1171

**Employer:** You are required to date this form and provide copies to your insurer or claims administrator and to the employee, dependent or representative who filed the claim within **one working day** of receipt of the form by the employee.

SIGNING THIS FORM IS NOT AN ADMISSION OF LIABILITY

**Empleador:** Se requiere que Ud. feche esta forma y que provéa copias a su compañía de seguros, administrador de reclamos, o dependiente/petición dentro del plazo de **un día hábil** desde el momento de haber sido recibida la forma del empleado.

EL FIRMAR ESTA FORMA NO SIGNIFICA ADMIS...

**STATE
COMPENSATION
INSURANCE
FUND**

3301 (REV. 6-95) - DWC Form 1 (REV. 1-94)

A-4



**DESERT VALLEY MEDICAL GROUP, INC.**

**INDUSTRIAL MEDICINE CLINIC**

# Work  Status Report

☐ Emergency Dept.
☐ Urgent Care

Employee: _Gale Amparan_

Company: _Gtcc Desert View_     Today's Date: _8.9.04_

Date of Injury: _8.05.04_     Time In: _1:15_

Diagnosis: _Neck Strain (R) shoulder Sprain_     Time Out: _2:55_

Social Security #: _____

| **Work Status:** (check all applicable items) | **Request for:** ☑ physical / occupational therapy |
|---|---|
| ☑ Off work until ☑ Reevaluation ☐ _8/ ×/04_ | _2_ x / week   for _2_ weeks |
| ☐ Modified duty   from ☐ today ☐ _/ /_ | ☐ EMG / Nerve Conduction Velocity Study |
| till ☐ reevaluation ☐ _____ | ☐ CT / MRI / bone scan |
| With these restrictions: | ☐ referral to _____ |
| | for evaluation and treatment |

With these restrictions:
☐ lifting, pushing, and pulling up to _____ pounds
☐ no stooping, bending, or climbing ladders
☐ sit-down stationary work only
☐ sit down ☐ walk around for _____ min per hour
☐ no machine operation ☐ no reaching above shoulder level
☐ no continuous / repetitious elbow / wrist movements
☐ rest upper extremities for _____ / min per hour
☐ no / minimal use of ☐ right ☐ left
  ☐ upper extremity ☐ thumb
  ☐ _____ fingers
☐ trial of ergonomic wave keyboard x 2 weeks
☐ no kneeling or squatting ☐ work on ground level only
☐ no driving any / commercial vehicles
☐ drive only automatic transmission vehicles
☐ no work around dust / fumes / chemicals
☐ wear protective eye goggles
☐ wear water-resistant non-allergenic gloves
☐ others _____

**Other instructions:**
☑ take medications as prescribed
☐ start / continue therapy
☐ bedrest on firm mattress for 3 days then progressive ambulation
☑ warm / cold packs as explained
☑ massage affected area(s)
☑ wear device(s) _Soft collar to so injury_
  _pick in E R_
☐ elevate R  L _____ extremity
☐ no weight bearing on  R  L  leg
☐ use crutches / walking cane as explained
☐ drive only vehicles with automatic transmissions ☐ no driving
☐ gentle progressive flexibility and strengthening exercises
☐ keep dressing on and keep clean and dry
☐ wound care as explained
☐ keep eye patch on including during sleep
☑ others _WM (VF) pt Dept rela client_
  _a medication_

☐ **Regular duty** to start on _____

☑ Return visit in _8/12/04_ days / weeks
☐ Discharge on next visit       _8-12-04_
☐ Return only if medically needed     _1.30_
☐ Follow up with _____

☐ frequent monitoring of mental status

☑ seek urgent / emergent care if condition worsens.

☐ **Discharged from our care.**
  ☐ No permanent disability anticipated.
  ☐ Permanent and Stationary. See modified duty restrictions.
  ☑ Referred to a specialist. Disability status to be determined by specialist.
  ☐ Patient requests follow-up by own doctor.

I certify that I have been explained the potential side effects of the prescribed and / or over-the-counter medications and the other instructions above, that I understand all said to me, and that I have received a copy of this report.

_____
Treating Physician's Signature

X _____
Patient's Signature

DVMG-20-10 (11-19)

*A/6*
*3 pages*



A Medical Group Inc.

**Matthew J. Pautz, D.O., M.S.H.P.E.**
Orthopaedic Surgeon

### PRIMARY TREATING PHYSICIAN
### WORKER'S COMPENSATION P & S

**DOS:** 04/27/05

**PATIENT:** Amparan, Gale
**EMPLOYER:** Geo Inc.
**DATE INJ:** 08/05/04
**CLAIM NO:** 218344425

**INTRODUCTION:** The patient presents with chief complaint of neck and periscapular pain.

**HISTORY OF INJURY:** This is an otherwise healthy 28-year-old right-hand dominant female who works as a correctional attendant for Desert View's Correctional Facility in ▒▒▒▒. She has worked there for the last ▒▒▒▒ ▒▒▒▒. Prior to that she worked in security. She states that she was performing her normal job duties on 08/05/2004 when she was trying to restrain an inmate who was assaulting another staff member, when she grabbed inmate from behind her ▒▒▒▒▒▒▒▒, the inmate then rammed her into the straight door and after that third time, the door was open. She states that after that, she struck her back and head, injuring her neck. She states that she was seen immediately in the emergency room following ▒▒▒ incident and x-rays were taken. No fractures or dislocations were seen. She states she had been hurt in her neck back in 2000 with a whiplash injury involving motor vehicle accident, but this resolved after a week or two and had no symptoms following that. She was treated medically with Skelaxin, Soma, Tylenol #3, and Bextra and had a collar on occasion. But overall she had not really gotten much better. [She states that when she sits for long periods of time, looks down, or with sudden head movements, she will have severe pain in the neck which radiates to the left shoulder blade, arm, and forearm area, occasionally down the forearm to the hand to the ulnar aspect of the hand with numbness and tingling in that area.] She denies bowel or bladder dysfunction. She feels better when she lies down with heating pads. She has no other complaints.

**CURRENT COMPLAINTS:** Currently, Ms. Amparan states that following the physical therapy, medications, and time, she has only occasional pain in the neck, that actually she has frequent pain but it is mild and controllable with just medications and activity modifications. She states that she still has pain in the neck and periscapular area, but overall it is much improved. She requires regular dose of medications but this controls it quite well.

*with physical therapy*
**PAST MEDICAL/SOCIAL HISTORY:** Significant for asthma. Smokes six cigarettes. She denies alcohol or street drug use.

**MEDICATIONS:** Skelaxin, Soma, Tylenol #3, and Bextra.

**ALLERGIES:** Augmentin, amoxicillin, and Ceclor.

**FAMILY HISTORY:** Heart disease, cancer, and diabetes.

**SURGICAL HISTORY:** Appendectomy and left knee surgery.

**REVIEW OF SYSTEMS:** Noncontributory, see HPI.

18564 Highway 18 • Suite 303 • Apple Valley, CA 92307 • (760) 242-0602 • Fax (760) 242-0603

1

*p. 7*

46

## PHYSICAL EXAMINATION

### CERVICAL SPINE
### RANGE OF MOTION (Active in degrees)

**NECK**

|  | Injured | Uninjured |
|---|---|---|
| Flexion | 60 | 70 |
| Extension | 30 | 40 |
| Right Rotation | 70 | 80 |
| Left Rotation | 70 | 80 |
| Right Lateral Bend | 30 | 40 |
| Left Lateral Bend | 30 | 40 |

**MOTOR**

|  | Injured | Uninjured |
|---|---|---|
| Shoulder abduction (C5) | 5/5 | 5/5 |
| EPL (C6) | 5/5 | 5/5 |
| Wrist Flexion/Finger Extension/Triceps (C7) | 5/5 | 5/5 |
| Finger Flexion (C8) | 5/5 | 5/5 |
| Finger Abduction/Adduction (T1) | 5/5 | 5/5 |

**SENSATION**

| | | |
|---|---|---|
| Lateral Arm (C5) | Intact | Intact |
| Radial Forearm, Thumb & Index Finger (C6) | Intact | Intact |
| Middle Finger (C7) | Intact | Intact |
| Ulnar Forearm & Little Finger (C8) | Intact | Intact |
| Medial Upper Arm (T1) | Intact | Intact |

**Deep Tendon Reflex**

| | | |
|---|---|---|
| Biceps (C5) | 2+ | 2+ |
| Brachioradialis (C6) | 2+ | 2+ |
| Triceps (C7) | 2+ | 2+ |

| | | |
|---|---|---|
| Radial Pulses | 2+ | 2+ |
| Spurling's sign | Negative | Negative |
| Hoffmann's sign | Negative | Negative |

**COMMENTS:**

**REVIEW OF MEDICAL RECORDS:** Approximately 45 minutes were spent reviewing medical records.

1. Dr. Pautz's note, 09/08/04: Diagnosis is cervical radiculopathy, left upper extremity. Recommended Medrol Dosepak, MRI examination, physical therapy, return after MRI.

2. Dr. Pautz's note, 10/04/04: Diagnosis is radiculopathy of left upper extremity, probably secondary to brachial plexus entrapment or degenerative disc disease. Recommended EMG nerve conduction study, physical therapy, and medical treatment. Total temporary disability. Return to clinic after EMG nerve conduction study.

3. ~~Dr. Pautz's note, 10/25/04: VICTIM~~ curvature, ~~diagnosis~~.

4. Dr. Pautz's note, 11/15/04: ~~Diagnosis is cervical radiculopathy~~. Recommended EMG nerve conduction study. Physiotherapy with Dr. Zaccaglin. Return after EMG and nerve conduction study. Total temporary disability.

5. EMG and nerve conduction study, dictated by Dr. Ron Levine, December 17, 2004. Impression is no neuropathy found.

6. Dr. Pautz's note, 02/02/05: ~~...~~ physiotherapy with Dr. Zaccaglin ~~...~~

7. Dr. Pautz's note, 03/15/05: Diagnosis is same. Recommended increase activities and physiotherapy with Dr. Zaccaglin, regular duty, medical treatment. I recommended she be referred to Dr. Yelamanchili, cardiologist, as she

2

May 05 05 12:48p    ORTHOPAEDIC INSTITUTE OF    n/b    p.3

has concerns being on Bextra from her neck and arm problems, to make sure that she was not having any adverse effects from the Bextra. She has not yet seen Dr. Yelamanchili. Released back to full duty.

**DIAGNOSIS:** Brachial plexopathy left upper extremity, improving.

**RECOMMENDATIONS:** I recommend Ms. Amparan increase her activities gradually as tolerated. I will see her back in the office as needed.

**DISABILITY STATUS:** Released back to regular duty. The patient is permanent and stationary.

**CAUSATION:** It does appear in the absence of evidence to the contrary, and given the medical information available to me today, that the patient's current complaints are a direct result of the injuries at work on 08/05/2004.

**VOCATIONAL REHABILITATION:** Not indicated.

**SUBJECTIVE FACTORS OF DISABILITY:** Patient complains of frequent mild to occasional moderate pain in the neck and periscapular area with occasional numbness and tingling in her hand.

**OBJECTIVE FACTORS OF DISABILITY:** None.

**WORK RESTRICTIONS:** Because of patient's brachial plexopathy, patient will be precluded from lifting anything more than 50 pounds with no use of the left arm overhead more than 30 minutes at a time without a 5-minute break. No prolonged keyboarding more than 30 minutes without a 10-minute break.

**FUTURE MEDICAL TREATMENT:** I think, in the future Ms. Amparan will require access to medications in the form of anti-inflammatories, muscle relaxants, and mild narcotic pain medications. I have written the prescriptions and she may refill these. I also recommend that she receive medical treatment to follow the potential adverse effects of these medications with a certified family practitioner or a cardiologist. I have recommended Dr. Yelamanchili, otherwise she can see anyone from either her or the carrier's preference, but I do think this is recommended because she needs to be on long-term medications. She also will require additional physical therapy, perhaps as long as for a year for control of her pain. Additional studies may be indicated if her symptoms progress and surgery may be indicated. I will see her back in the office as needed.

Thank you again for your help with this patient.
If you have any questions or require any clarifications regarding this report, please feel free to contact my office.

**DISCLOSURE STATEMENT**

I declare under penalty of perjury that I, the signing physician, have actually performed this examination and the time spent in performing this evaluation is in compliance with the IMC Guidelines (Section 5307.1 and 5307.6). I declare under penalty of perjury that I have devoted at least 1/3 of my total practice time to providing medical treatment. I have not violated Labor Code Section 139.3, and the contents of the report and bill are true and correct to the best of my knowledge. This statement is made under penalty of perjury. I declare under penalty of perjury that the information contained in this report and, its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that this report accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

DATE OF REPORT:
DATED THIS 27th DAY OF APRIL
AT SAN BERNARDINO COUNTY, CA
Sincerely yours,
Matthew J. Pautz, D.O., MSHPE
Qualified Medical Evaluator

Dated dictated 4/27/2005/mps/lkg

3

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

DEPARTMENT NO. 2          HON. JOHN TOMBERLIN, JUDGE

THE PEOPLE OF THE STATE OF CALIFORNIA,)
                                      )
                     Plaintiff,       )
                                      )
          v.                          )          CASE NO.
                                      )          FVI-020303
**JOHN BARBER**,                      )
                                      )
                     Defendant.       )
_____)          **COPY**

REPORTER'S TRANSCRIPT OF PRELIMINARY HEARING

WEDNESDAY, OCTOBER 19, 2005

APPEARANCES:

FOR THE PEOPLE:                  **MICHAEL A. RAMOS**
                                 District Attorney
                                 BY:  **DAVID FOY**
                                 Deputy
                                 14455 Civic Drive
                                 Victorville, California
                                 92392


For the Defendant:               IN PRO PER




REPORTED BY:                     FRANCES M. MACIAS, CSR, RPR.
                                 Official Reporter, C-10918

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

MASTER

APPEARANCE INDEX

| DAY | DATE | SESSION | VOL. | PG. |
|-----|------|---------|------|-----|
| WEDNESDAY | OCTOBER 19, 2005 | A.M. | 1 | 1 |

------------------------------------------------------------

WITNESS INDEX

| PEOPLE'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS | VOL. |
|-------------------|--------|-------|----------|---------|------|
| **WARFIELD, EUGENE** | 3 | 9 | | | 1 |
| **AMPARAN, GALE** | 20 | 26 | 40 | | 1 |

------------------------------------------------------------

| DEFENSE'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS | VOL. |
|--------------------|--------|-------|----------|---------|------|
| **BARBER, JOHN** | 42 | 51 | | | 1 |

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

1          MR. FOY:  Thank you, your Honor.  People call

2  Captain Amparan.

3          THE COURT:  Offer of proof?

4          MR. FOY:  Count 2 alleges -- or Count 3 and 4,

5  are battery on her.  And also we also have to prove GBI

6  on her.

7          THE COURT:  Okay.

8          THE BAILIFF:  Take the stand.

9                    **GALE AMPARAN,**

10  called as a witness on behalf of the People, was sworn

11  and testified as follows:

12          THE CLERK:  You do solemnly swear to tell the

13  truth, the whole truth, and nothing but the truth, so

14  help you God?

15          THE WITNESS:  Yes, I do.

16          THE CLERK:  Thank you.  You may be seated.

17          Please state your full name and spell your

18  first and last for the record.

19          THE WITNESS:  My full name is Gale Lynn Amparan.

20  First name spelling, G-A-L-E, last name, A-M-P-A-R-A-N.

21          THE COURT:  A-M-P-A-R-A-N?

22          THE WITNESS:  Yes.

23          THE COURT:  And since you said it, how do you

24  spell Lynn?

25          THE WITNESS:  L-Y-N-N.

26          THE COURT:  Your witness, Mr. Foy.

27          MR. FOY:  Thank you, your Honor.

28                 **DIRECT EXAMINATION**

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

BY MR. FOY:

Q    Captain Amparan, on August 5th, 2004, how were you employed?

A    I was a correctional watch commander, lieutenant at Desert view.

Q    Desert View MCCF?

A    Yes.

Q    And for the record when you seated at counsel table, did you see Officer Warfield testifying?

A    Yes, I did.

Q    On that night did you respond to a call for help from Officer Warfield?

A    Yes, I did.

Q    And where did you go?

THE DEFENDANT:  Objection.

THE COURT:  Just one second.

THE DEFENDANT:  Objection.  There is no statement that it was a call for help.  That's leading her.  It was never stated.

MR. FOY:  It's foundational.

THE COURT:  It might be leading, but I am going to overrule the objection.

BY MR. FOY:

Q    Where did you go to respond to that call?

A    I walked out of the watch office into the main quarter.

Q    When you got there, did you see anybody who you see in the courtroom today?

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

1    A    Yes, I saw inmate Barber.

2    Q    For the record would you tell the Court where

3    he is seated and describe an article of clothing he's

4    wearing?

5    A    He's seated directly next to you on the right,

6    wearing orange (indicating).

7    MR. FOY:    Indicating the defendant, your Honor?

8    THE COURT:    Yes.

9    BY MR. FOY:

10    Q    Who else did you see there?

11    A    Officer Warfield.

12    Q    What was happening?

13    A    As soon as I walked out of the watch office,

14    because I had received a radio call from Officer

15    Warfield, stating he needed assistance in the main

16    corridor, when I called out, I observed inmate Barber

17    walking towards me, and Officer Warfield telling him to

18    stop.

19    Q    All right.    What happened next?

20    A    When inmate Barber saw me walk out he

21    immediately turned around and headed back towards the

22    direction from which he came.

23    Q    All right.    What happened next?

24    A    I asked what was going on -- inmate Barber was

25    yelling that he wanted to see the CDC sergeant.    I walked

26    up to the classroom where Officer Warfield had the door

27    opened with his right hand holding the door open so

28    inmate Barber can walk back in.    And I said what's going

1  on.  You need to calm down, and I will get the CDC

2  sergeant.

3      Inmate Barber was attempting to walk into the

4  classroom and then he would stop and turn around.  He

5  pulled his shoulders up and had his fist clenched and he

6  proceeded to use profanity, and I said you need to calm

7  down.  At this point inmate Barber screamed, "You want

8  problems?"  And he took his step towards me with clinched

9  fist and his shoulders up.  I immediately stepped back.

10      Q    What happened next?

11      A    Inmate Barber again screamed, "You want

12  problems?"  And took another step towards me, at which

13  point I feared to even grab for my radio, because I

14  didn't want any sudden movement to cause him to hit me.

15  His lips were snarled and he had a very scary look on his

16  face, I guess you can say.

17      Q    What happened next?

18      A    Officer Warfield was to my right, holding the

19  door open still with his right hand, and he said, hey --

20  at which point inmate Barber spun around with his right

21  hand and punched Officer Warfield straight in the face,

22  knocking him back.  Inmate Barber continued with his left

23  and his right, punching Warfield in the face.

24      Q    What were you doing then?

25      A    As soon as I came out of the shock of seeing

26  him hit my officer, I grabbed the radio and called the

27  code black which means officer needs assistance

28  immediately.  I put my radio back in and I attempted,

1    while I was screaming for inmate Barber to stop, stop,

2    you need to stop, I attempted to grab his hand and he

3    spun around to his right trying, I would assume, trying

4    to hit me, came up with his elbow, so I took a step back.

5    I waited approximately another 30 seconds to try again,

6    and at the entire time he was still hitting Warfield in

7    the face and in the head.

8         I looked at the other officer that was present, and

9    I said we need help.  Then I saw inmate Barber, off at

10   that time.  Officer Warfield had slumped down, and inmate

11   Barber had reached around Officer Warfield from behind

12   him, and it appeared to me that he was going to try to

13   choke him.  That's when I stuck my right arm through his

14   elbow I guess and hooked it.

15             THE COURT:  Just a minute.  "His" meaning?

16             THE WITNESS:  Inmate Barber.

17             THE COURT:  Go ahead.

18             THE WITNESS:  And I put my left arm around his

19   back to try to pull him off.

20             THE COURT:  "His" also meaning inmate Barber?

21             THE WITNESS:  Inmate Barber.  Excuse me, I'm

22   sorry.  At which point I was able somewhat to get inmate

23   Barber to let go of Officer Warfield.

24   BY MR. FOY:

25        Q    What did Inmate Barber do at the point once you

26   had him?

27        A    I was on his back, and I was touching the floor

28   at that time, because he was slumped over, he then stood

PRELIM

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

off and then I was completely off the floor.   Inmate
Barber proceeded to slam me into a metal door, S-20 door,
approximately three times he slammed me.

Q     When you say slam, were you still on his back?

A     I was still on his back.

Q     So how -- did he just walk back toward the wall
or what?  How did he do that?

A     When he stood up straight, he used his entire
weight and lunged back causing me to hit the door.  The
third time that he did that, the mechanically locked door
actually popped open, which takes a great force to do.

Q     What happened next?

A     I looked over to my left, and ordered Officer
Chavira, to call for help again, and I pushed forward and
heard the doors lock behind me and that's when help
arrived.

Q     Okay.  Now, as a result of being slammed
against the door, did you receive any injuries?

A     Yes, I did.

Q     Please describe those injuries?

THE COURT:  How do you spell Chavira?

THE WITNESS:  Chavira, C-H-A-V-I-R-A, I believe.

THE COURT:  -V-I-R-A?

THE WITNESS:  I believe so.

THE COURT:  Thank you.  The question was
describe your injuries.

THE WITNESS:  I received two bulging disks in my
lower neck at one to one and a half centimeters.

*** NOT TO BE PHOTOCOPIED ***
*** PURSUANT TO GOVT. CODE SEC. 69954 ***

1    BY MR. FOY:

2        Q    And has that caused any physical problems for

3    you?

4        A    Unfortunately, yes.  I have a disability due to

5    the injury causing tingling and numbness down my left

6    arm.

7        Q    Does that continue to this day?

8        A    Yes.

9        MR. FOY:  No additional questions.

10        THE COURT:  Cross?

11                    **CROSS-EXAMINATION**

12    BY THE DEFENDANT:

13        Q    You stated that I was slumped over and you got

14    on my back while I was slumped over?

15        A    No.

16        Q    You said you got on my back and I stood up

17    to -- I stood up with you on my back; is that correct?

18        A    That's correct.

19        Q    And you had my arm -- you stated that you had

20    my arm pinned behind me?

21        A    No.  I stated I grabbed your right arm and held

22    onto it.

23        Q    So you were -- had my right arm, but I picked

24    you up on my back; is that fair to say?

25        A    Yes.  I said I had my left arm over your left

26    shoulder.

27        Q    Oh.  So may I ask you how much you weigh?

28        A    At the time?

KAISER PERMANENTE®

AMZ FAMILY PRACTICE

2060-UC    0014825859

151  04/04/04    04:42P    04:42P    153512

AMPARAN, GALE L

92405    DC= N

MRN:  00 0014825859

PERSONAL PHYSICIAN    SX= F

WI INJURY    HD GSUGI SPOKEN LANG: ENGLISH    INTERPR REQ: N  IMAGDIFF=   0.00  IMAGOUTP=   0.00  IABOUT=

- [ ] NON-MEMBER
- [ ] WORK RELATED
- [ ] STATE AID
- [ ] OUT OF REGION
- [ ] NIGHT CLINIC
- [x] APT. REQ. SPEC. PROC.
- [ ] MD/MENTOR

**CHANGE** [ ]

**PROVIDER CODE:** 04 PA

**SERVICE CODE:** 35 SURG PROC - SHORT

**PROVIDER CODES:**

| | | | | |
|---|---|---|---|---|
| 01 MD | 02 MD-RES | 03 NP | 04 PA | 05 RN | 06 LVN |
| 09 DPM | 23 INTERN | 28 CA | 54 PHARMACIST | 72 ROOM | 74 PROCEDURE |

**CODES:**

16 VISIT-ADULT    23 PROBLEM VISIT    13 VISIT-CHILD

18 PE-ADULT/PRE-OP PE    25 RIGID SIGMOID

28 FLEXIBLE SIGMOID    15 PE-PEDS

14 OBSTETRICS-NEW    35 SURG PROC - SHORT    20 PE-INFANT/WELL BABY

17 OBSTETRICS-RETURN    36 SURG PROC - LONG    27 HOLDING

19 NURSING PROCEDURE    24 UNPLANNED ADMIT    77 WH ONLY UNSCH

TALLY DATA  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20

OD  ADV WI
<>SUPPLIES

REGISTRATION / FEES    15.00  11    000

X-RAY    < >CXR/PA&LAT    < >MAMMOGRAM    Rt. Hand And Wrist

LAB(CIRCLE IF STAT)< >RBS    < >CULT(THROAT)  < >CREAT  < >PAP
< >CBC(W/OUT DIFF) < >FBS    < >STOOL OBL    < >K+    < >PREG TEST
< >PSA    < >HBA1C    < >CHOL/HDL    < >LYTES  < >WET MOUNT
< >UA    < >MICROALBUMIN  < >LIPID PROFILE < >TSH    < >GC/CHLAM SWAB
    < >GC/CHLAM URINE

INJECTABLES/MEDICATIONS/IMMUNIZATIONS (NOTE DOSAGE & ROUTE)  <>PDRIX(0.5ML IM)
<>DTAP(0.5ML IM) <>PREVNAR(0.5ML IM) <>IPV(0.5ML SQ) <>MMR(0.5ML SQ)
<>VARICELLA(0.5ML SQ) <>HIB(0.5ML IM) <>COMVAX(0.5ML IM) <>HEP B(0.5ML IM)
<>HEP B(1.0ML IM) <>HEP A(0.5ML IM) <>HEP A(1.0ML IM) <>FLU(0.25ML IM)
<>FLU(0.5ML IM) <>PNEUMOVAX(0.5ML IM) <>TD(0.5 ML IM) <>PPD(0.1ML ID)
OTHER:    <> VIS GIVEN

SPECIAL PROCEDURES/OTHER  < >EKG
PLEASE RETAIN THIS RECEIPT FOR TAX OR INSURANCE PURPOSES.

Rt. hand inj - dryer fell on it

JFM5 AMZ 151-FAM04-20040404-164309 07D0402R

04-04-04 16:43:09
2060-UC
153516

TOTAL DUE    15.00



**KAISER PERMANENTE.**
FONTANA MEDICAL CENTER
DIAGNOSTIC IMAGING

AMPARAN, GALE L



**Patient Name:** AMPARAN, GALE L
**MRN** (FON)
**Exam:** (FON)  DEXA BONE DENSITY HIP AND
                 SPINE

**Scheduled On:** 1/24/2006 at 09:30AM
**Location:** DEXA2

## DEXA BONE DENSITY SCAN - LOCATED ON THE 4TH FLOOR OF MOB 2

REPORT TO:  The Diagnostic Imaging (X-Ray Department) in Medical Office Building 2 (MOB 2) 4th floor at the Fontana Medical Center.

ABOUT YOUR EXAM
A Bone Density Scan is a type of exam that measures your bone mineral density. Measures are taken at certain points in your body.  The results let your Doctor know about your bone strength.

 BEFORE THE EXAM
* You should not be pregnant for this exam.  If you are pregnant - or there is a chance you are pregnant, please call us right away at the number listed below.

* Call the number below if you have had a CT, Upper GI, or BE exam in the last 7 days.  If so, your scan date will need to be changed.

DON'T FORGET
* Please do not bring any children with you.  Children are not allowed in the exam rooms.  And for safety reasons, children may not be left alone in the waiting room.

* If you are under 18 years of age and are not married, a parent or legal guardian must come with you.

* Be sure to arrive 15 minutes BEFORE your exam time.

* Do not bring items of value.  We do not accept responsibility for loss or damage.

TO CHANGE YOUR EXAM DATE
* Call us 1 or 2 days in advance - to cancel or change your exam date.

If you have any questions please call us a████████4, Monday – Friday, between the hours of 8:30a.m. and 4:30 p.m.
Requesting MD:   SUGIMOTO, GARY DWAYNE, M.D.



PRE-SORTED
FIRST CLASS.

**FIRST
CLASS**

usd 743
01

SAN BERNARDINO
MAR 14 '08
CA.

H.METER 71

Burrell #050336015L
W.V.D.C. S-D-B
9500 N. Etiwanda Ave.
Rancho Cucamonga Ca 91739

RECEIVED

MAR 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. Bureau of Prison
450 Golden Gate Ave
P.O. Box 36137
San Francisco  Ca 94102